IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MICHAEL MAHAFFEY, ) | Civil Action No. 3:06-3383-SB-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| SIMON MAJOR, JR., and ) | |
| OFFICER REUSHELL ALEXANDER, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendants. ) | |
| ) | |

Plaintiff filed this action on December 1, 2006.[1] At the time of the alleged incidents, he was a pretrial detainee at the Sumter-Lee Regional Detention Center ("SLRDC"). He is currently incarcerated at the Lee Correctional Institution of the South Carolina Department of Corrections ("SCDC"). Defendants are Simon Major, Jr. ("Major"), the Director of the SLRDC, and Reushell Alexander ("Alexander"), an officer at the SLRDC. On April 19, 2007, Defendants filed a motion for summary judgment. Plaintiff, because he is proceeding pro se, was advised on April 23, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on May 16, 2007.

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because these are dispositive motions, this Report and Recommendation is entered for review by the court.

DISCUSSION

On September 25, 2006, during the evening headcount, Plaintiff was reading his Bible while standing on the "red line." Plaintiff was counted. A little while later Correctional Officer Alexander shouted at Plaintiff, but Plaintiff was unsure what Alexander was saying because Plaintiff had tissue in his ears and was reading his Bible. A few people near Plaintiff had to get Plaintiff's attention. Alexander was telling Plaintiff to close his book. Plaintiff was placed on cubicle restriction that night. The next day he was moved from E-Pod, which is open pod (where detainees live in open cubicles) to B-Pod, a closed pod.

Plaintiff claims that Defendants violated his freedom of religion by prohibiting him from reading his Bible while standing in line for an detainee headcount, placing him in lockdown after the incident, and ignoring the grievances he filed. He requests that he be moved back to E-Pod, compensated for "wrongful confinement," receive a letter of apology from Officer Alexander, and have the rules and regulations of the SLRDC enforced "so that this Dention [sic] Center operates as a structure and that the Officers do not make up and changes the rules and regulations as they go along." Complaint at 5. Defendants contend that their motion for summary judgment should be granted because: (1) Plaintiff failed to exhaust his administrative remedies;[2] (2) Plaintiff is unable to state a claim pursuant to the First Amendment, as there is no evidence that he has been discriminated against based on his religion; (3) Plaintiff is unable to state a claim under the Fourteenth Amendment, as he was not punished by Defendants; (4) Plaintiff has failed to establish any personal involvement on the part of Defendant Simon Major, or any theory of liability upon which Major could be responsible for Plaintiff's alleged deprivations; (5) Defendants are entitled

---

[2]The parties dispute whether Plaintiff exhausted his administrative remedies.

2

to qualified immunity; (6) Plaintiff is unable to state a constitutional claim based on the grievance procedure at the SLRDC; (7) Plaintiff's claims for injunctive relief are now moot as Plaintiff is no longer in a closed pod; and (8) this action should be dismissed under 28 U.S.C. § 1915(e) and § 1915A, and should count as a strike.

1.     First Amendment/Religion

Plaintiff alleges that his First Amendment rights were violated because he was not allowed to read his Bible during institutional headcounts and was moved to a closed pod after he did so.[3] Defendants contend that Plaintiff is unable to state a claim pursuant to the First Amendment as he has not shown that he was discriminated against based on his religion. They argue that even if the Court determines that Plaintiff was denied a reasonable opportunity to pursue his faith, the policies in place at the SLRDC reasonably relate to legitimate penological interests of having accurate, efficient headcounts to secure the detention center and Plaintiff has an alternative means of exercising his rights as he is allowed to read his Bible when he is in his cell or cubicle.

The rights and protections of the Constitution do not end when a citizen is sentenced to prison. Turner v. Safley, 482 U.S. 78, 84 (1987).[4] Imprisonment may limit, but not completely abrogate, a prisoner's right to the free exercise of his religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987). However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by considerations underlying our

---

[3] Plaintiff also claims that he has been subjected to harassment because he is a Christian, but he has not specified how he was harassed.

[4] The Fourteenth Amendment affords at least as much protection to persons the State detains for trial. See Bell v. Wolfish, 441 U.S. 520, 545 (1979) ("[P]retrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners").

3

penal system." Price v. Johnson, 334 U.S. 266, 285 (1948). For that reason, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. at 89. Where prison officials demonstrate that they are pursuing a legitimate governmental objective, and show a "minimally rational relationship between that objective and the means chosen to achieve that objective," the means must be upheld. Hines v. South Carolina Dep't Corrs., 148 F.3d 353, 358 (4th Cir. 1998).

Plaintiff fails to show that his constitutional rights were violated. Defendants provide that Plaintiff was moved to a closed pod unit because Plaintiff failed to follow orders and created a disruption during the headcount. See Robert Jordan Aff., Para. 7; Alexander Aff., Paras. 7-8. SLRDC Assistant Director Daryl McGhaney ("McGhaney") and Alexander state that reading during the headcount is a violation of SLRDC policy, regardless of whether the material is of a religious nature. McGhaney Aff., Paras. 8, 10, 16; Alexander Aff., Paras. 4 and 9. There is no indication that Plaintiff is unable to exercise his religion, including reading his Bible, in his own cell.

Even if Defendants actions impinge on Plaintiff's constitutional rights, Plaintiff fails to show that his constitutional rights were violated because the regulations are reasonably related to legitimate penological interests. To determine whether a regulation relied upon by a defendant is constitutionally permissible, the court must consider the following factors: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; and (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. Turner, 482 U.S. at 89-90.

Defendants provide that detainees are not allowed to have anything in their hands during the headcount, as it is a violation of policy and is disruptive to the operations of the detention center. See Alexander Aff., Para. 5. There is a valid, rational connection between this regulation and the legitimate governmental interest of having accurate, efficient headcounts to secure the SLRDC. McGhaney states that the headcount is a common practice in a correctional facility designed to verify that each detainee is present within their assigned unit. During the headcount, detainees are required to lineup outside their respective cells and be counted, and detainees are not allowed to talk or have anything in their hands. He states that any disruption of the headcount presents a danger to the other detainees and officers and a threat to the security of the institution. McGhaney also states that it is appropriate to put a detainee who is disruptive or uncooperative during a headcount in a closed pod unit because he presents a threat to the security of the institution. McGhaney Aff., Paras. 6-8. Alternative means of exercising the right remain open. McGhaney states that the SLRDC makes every effort to provide reasonable opportunities for inmates to pursue their faith and that a detainee may read his Bible in his cube or pod. See McGhaney Aff., Para. 13. Finally, the accommodation of Plaintiff's constitutional right impacts the guards and other detainees and the allocation of prison resources in that it would create an obstacle to maintaining the security of the SLRDC. McGhaney states that the headcount verifies that each detainee is present within the confines of the wing and any disruption or delay during the headcount endangers the detainees and staff and hinders confirming the number of detainees, which could be a security threat. See McGhaney Aff., Paras. 6-7.

### 2. Fourteenth Amendment/Punishment

Plaintiff may be attempting to allege that his Fourteenth Amendment rights were violated because he was transferred to a closed pod as punishment for reading his Bible during the evening headcount. Defendants contend that Plaintiff cannot establish a constitutional violation because the restrictions are reasonable and do not amount to punishment under the Fourteenth Amendment.

Allegations of deprivations of pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

(Citations omitted). However, the due process rights of detainees are at least coextensive with Eighth Amendment rights of convicted prisoners, and perhaps greater. Whisenant v. Yuam, 739 F.2d 160 (4th Cir. 1984); Loe v. Armistead, 582 F.2d 1291, 1292 (4th Cir. 1978).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Thus, it must be determined whether the conditions and/or treatment received by a plaintiff amounted to punishment. Absent a showing of expressed intent to punish on the part of correctional officials, the determination whether a particular condition or restriction is punishment generally

turns on whether it is rationally connected to a legitimate non-punitive purpose and whether it is excessive in relation to that purpose. Bell, 441 U.S. at 538.

Defendants provide that SLRDC is divided into two types of pod systems. The first type consists of open pod units, in which detainees who do not present a disruption to the institution are housed. The second type consists of closed pod units, divided into B-Pod and C-Pod, in which problematic detainees are housed. The B-Pod unit houses detainees who have shown an inability or unwillingness to follow the rules of the detention center. The C-Pod unit houses maximum security detainees. McGhaney Aff., Para. 9.

Here, Plaintiff was transferred to B-Pod after he admittedly was reading during the headcount and had tissue in his ears. Alexander states that as a result of Plaintiff's actions, he was forced to interrupt the headcount procedure and issue several commands directly to Plaintiff. He states that the interruption was a disruption to the procedure and jeopardized the health and safety of the detainees and staff. Alexander also states that Plaintiff failed to follow orders to stop what he was doing. Alexander Aff., Paras 5-6.[5] Sergeant Jordan states that he ordered that Plaintiff be removed from the open pod unit to the closed unit to maintain the safety and security of the institution. See Jordan Aff., Para. 5.

Here, the restrictions imposed on Plaintiff prohibiting him from reading his Bible and placing tissue in his ears during the headcount are rationally connected to a legitimate, non-punitive purpose of maintaining security at the detention center by having accurate headcounts. The action of moving

---

[5]Plaintiff disputes that the SLRDC has rules against reading in the headcount line or having tissues in his ears during the count. He has, however, presented nothing to dispute Defendants' assertion that these rules were in place. Plaintiff also appears to claim that he did not disobey Alexander's orders. He, however, admits that he did not hear Alexander as he (Plaintiff) was reading and had tissue in his ears.

7

Plaintiff, who was disruptive during the headcount, to a more secure unit is also reasonably related to the legitimate governmental objective of maintaining security at the SLRDC.

    3.    <u>Injunctive Relief Moot</u>

Defendants contend that Plaintiff's claims for injunctive relief are now moot as Plaintiff is no longer on a closed pod. In his March 27, 2007 affidavit, McGhaney states that Plaintiff had been moved to J-pod, which is an open pod. McGhaney Aff., Para. 23. Since the time of the affidavit, Plaintiff has been transferred from the SLRDC to SCDC custody. Plaintiff's claims for declaratory and/or injunctive relief are moot, as he has been transferred from the SLRDC to SCDC custody. <u>See</u> <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir.1991)("[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief."); <u>Taylors v. Rogers</u>, 781 F.2d 1047, 1048 n. 1 (4th Cir.1986)(holding that prisoner's transfer mooted a request for declaratory and injunctive relief). <u>Cf.</u> <u>Powell v. McCormack</u>, 395 U.S. 486, 496 (1969)("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."); <u>Magee v. Waters</u>, 810 F.2d 451, 452 (4th Cir.1987); <u>Buie v. Jones</u>, 717 F.2d 925, 927-929 (4th Cir.1983); <u>Weinstein v. Bradford</u>, 423 U.S. 147, 149 (1975).

    4.    <u>Grievances</u>

Defendants contend that Plaintiff is unable to state a constitutional claim based upon the grievance procedure because his grievances were processed and answered and, even if Plaintiff's allegations regarding the grievance process are true, he possesses no constitutional right to a grievance system and therefore cannot state a federal constitutional claim.

McGhaney states that each properly filed grievance received from Plaintiff has been answered. McGhaney Aff., Para. 20. Further, allegations that Defendants have not followed their

own policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

     5.     Defendant Major - Supervisory Liability

Defendant Major contends that Plaintiff fails to establish any personal involvement on his part or any theory of liability upon which he could be responsible for Plaintiff's alleged deprivations. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff did not allege that Defendant Major was personally responsible for any of the alleged incidents. McGhaney states that, based on his review of Plaintiff's file, Defendant Major had no involvement in the allegations in Plaintiff's complaint. McGhaney Aff., Para. 21. Further, Plaintiff has not shown that this Defendant was deliberately indifferent to, or tacitly authorized, any

of these alleged actions or inactions. Thus, Plaintiff cannot show that Defendant Major is liable on a theory of respondeat superior or supervisory liability.

      6.    <u>Qualified Immunity</u>

Defendants also contend that they are entitled to qualified immunity. The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

<u>Harlow</u>, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

<u>Wiley v. Doory</u>, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), <u>cert. denied</u>, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 14) be granted.

                                      Respectfully submitted,

                                      s/Joseph R. McCrorey
                                      United States Magistrate Judge

December 17, 2007
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).